Okay, the next argued case is number 2013-1263, CORE Laboratories against Spectrum Tracer Services. Ms. Cheney, are you ready? Good morning, Your Honors. May it please the Court. The CORE is here appealing the District Court's denial of a preliminary injunction restraining the athletes from further use of CORE's trade secret software application during this lawsuit. CORE also appeals the District Court's denial of CORE's motion to sever the claims and to lift the stay as to CORE's non-patent claims so that those claims can proceed to discovery and trial. Now, CORE recognizes that ordinarily these decisions are all within the discretion of the District Court. However, in this case, the District Court abused its discretion by committing several clear errors. The Court's first clear error was to find that CORE's motion for a preliminary injunction was brought based on the same facts and the same argument as CORE's previous motion for a preliminary injunction. This was a clear error because CORE presented significant new evidence in connection with this emergency motion that was not before the Court and had not even yet come to light. What was the new fact, finding the software on the Spectrum computers? Yes, Your Honor. It was the evidence developed from Spectrum's computer programmer, Michael Swanson, the whistleblower. But there was no evidence of impending harm resulting from that, was there? Well, for CORE to discover that its competitor had possession of the trade secrets that related to all aspects of its tracing business is irreparable harm in and of itself because basically that creates a situation where CORE is essentially forced to compete against itself in the marketplace, which it should not have to do. Why is that or might that be irreparable? What facts might make that scenario irreparable, not adequately compensated in damages? On the assumption that their very existence in business, which perhaps they wouldn't have been in had they not been infringing the patent, your first preliminary injunction claim, what fact is relevant to trying to establish that the new injury is irreparable if the old one wasn't? Well, the new injury was based on the discovery of additional trade secrets that had been stolen. Right, and I know that the wrong alleged is quite, quite different. But just focusing, I guess picking up on Judge Lurie's question, just focusing on really the only basis that the district judge relied on, no irreparable injury, what's the new fact that bears on that? The new fact that bears on that is that CORE has been deprived of its entire property value in that trade secret and the appellees not only have used portions of the software application apparently already, but are trying to continue to use more of it and to introduce more of that into their own business. And do you rely on the, I guess the on-site functionality of the software and or what I gather were actual customer and price lists in the software package that they had? We rely on all of that, Your Honor. The software does have extensive on-site functionality that's used in the field by field engineers who are performing the tracing services. It's among other things, it's a series of interactive spreadsheets and forms that will help the engineer determine how that tracing job needs to be done. It does also include CORE's price lists and customer lists. We haven't yet had the opportunity to take discovery to find out specifically what portions of the software application may or may not have been used by the appellees, but they have possession of all of it and are in a position to use it and that presents a likelihood of irreparable harm to CORE. You said a moment ago that it had been used. Now you indicate that for lack of discovery you don't know that. The discovery that we have taken suggests that portions of it have been used. For example, portions of the software application include forms that are used during the services. During discovery we have received examples of the appellee's forms and they appear, the template is the same, just at the top it says spectrum instead of CORE. It appears that those forms were used, but we haven't actually been able to ask that question. The District Court's first error was the finding that the two requests for injunction were based on the same facts and the same argument. The second error was the finding of no irreparable harm. As we've talked about here, that finding was error. CORE did show there is a likelihood of irreparable harm based on the misappropriation and theft of the trade secret software application. Those errors led the District Court to erroneously deny the injunction. Because everything here turns on this irreparable harm, I just want to keep coming back to it. I think in answer to my earlier question, you focused on the loss of the property value consisting of this trade secret. If you went through this litigation and at the end of the day you won on the merits and they were then enjoined, they haven't disclosed this trade secret to anybody else, so it becomes yours again. What have you lost in the interim? Well, we've lost the exclusive use of our trade secret during the period that the lawsuit has been pending and the earlier period that they have had possession of it. We suspect that they've had possession of it since Mr. Bryson left CORE in 2010, which is shortly after the software application, this version of it was created. I guess the argument about loss of the value of this trade secret seems to me rather abstract, not concrete. The trade secret is valuable to you because it enables you, presumably, to get more customers or charge them more because you can do things that your competitors can't. If they were to disclose the trade secret, then you would never be able thereafter to be uniquely in possession of that valuable service to customers, but that's not what's at issue here. So it feels to me as though you're making an argument about their use during the three years or something this litigation is going to take, and therefore what you will lose in that period is some number of customers or sales or price, and the question is why is that any different from what was at issue in the patent infringement's preliminary injunction, which also would have to turn on loss of customers or price erosion or something like that. Well, Judge Taranto, you are correct that in a way it is abstract, the damage, because as the Supreme Court found in the Ruppelstaff case, the value of the trade secret is the property interest of the trade secret is the owner's ability to exclude others and to keep it a secret. That, unfortunately for you, I think is exactly true of patents, too. Not the secret part, but the excluding of others, and yet eBay says that's not enough to even clear the irreparable injury component of the four-part injunction standard. True, but I think that there's a difference because in patents, as you observed, there's not the secrecy. With a patent, of course, the patentee is telling the public how to do the invention. With a trade secret, the owner is specifically not, is keeping it to use for itself. Here, the accolades have been able to provide services, and if they use all of the functionality of the software application, they would be able to provide services that could potentially be higher quality, be more accurate, it would allow them to be more efficient and to do a better job. How much time elapsed between your discovery that the software was on Spectrum's computer and your request for a preliminary injunction? One week, Your Honor. One week? Yes. Wasn't there a two-year delay somewhere in this process? Yes, yes. The lawsuit was filed two years before. At the time that we filed the lawsuit, we asserted that the appellees had misappropriated the trade secrets in the design of the equipment that they used. The equipment that is used to provide these services is proprietary to CORE and was designed by CORE. CORE believed that the appellees had copied that equipment and were using those trade secrets. That was at the beginning of the lawsuit. Once CORE learned that they also had a copy of the software application, which documented all aspects of the tracing business and services, that's when CORE brought the suit. But when the suit was filed two years before the request for the PI, you suspected that trade secrets were being used. We did. We did. And part of the reason that we didn't move for a preliminary injunction right then was because there was a jurisdictional fight at the very beginning of the lawsuit that ended up taking about a year. By the time that was settled, a year had elapsed. That, as you know, as a practical matter, it becomes more and more difficult to get a preliminary injunction the more time has passed. And CORE simply made the decision that it wasn't going to do that at that time. But you did seek a PI on the patent count. Correct. That maps the trade secret. Yes, Your Honor. That had been more recently added to the lawsuit. So what CORE is asking this court to do is to reverse the district court and to direct entry of the injunction itself. Any other result by the district court, we recognize that normally it might be more appropriate to remand for further consideration by the district court. But in this case, we feel that any decision by the district court other than the injunction would be an abuse of discretion. Can I ask you, if we were to do that, do you care about the severance and stay? We care very much about the severance and the stay, Your Honor. Why? I mean, it seems to me, this is what I was thinking. The only way we have pendant jurisdiction over the stay, severance, is to the extent it is somehow tied to what we plainly have jurisdiction over, namely the preliminary injunction. And I can imagine that if there was a question about whether you're entitled to discovery that would enable a fair litigation of the preliminary injunction question, then we'd have pendant jurisdiction to stay. Well, to that extent, the stay really has to be lifted. But if we were to say, remand under instructions to issue the preliminary injunction, what further interest do we have or authority do we have to consider severance and stay of the rest of the proceedings? Well, Your Honor, I'll try to be brief. I understand my rebuttal time. The reason for granting the injunction would be as a result of the likely irreparable harm to CORE because the affidavits continue to possess software applications. That very irreparable harm is the same reason why the stay would be inappropriate as well. The affidavits still have CORE's trade secrets and are still in a position to use them. CORE hasn't yet been able to take discovery of how much use there has been. The appellees have presented evidence showing that their whistleblower found additional CORE files on Spectrum's computer network. We don't know what those are. They didn't disclose that. It's clear that the taking of trade secrets was much more extensive than was previously appreciated, and we need discovery and to move forward to find out what the scope of that is. And I'd like to reserve that. Yes, we'll save your rebuttal time. Thank you. Thank you. Mr. Franklin. Thank you, Your Honor. May it please the Court. Jonathan Franklin for the appellees. The only order or ruling that this Court has jurisdiction to review is the denial of CORE's second motion for a preliminary injunction. And that ruling should be affirmed because it was not an abuse of discretion. To take counsel's first assertion, the District Court did not hold that the second motion was based on all of the same facts and the same arguments. What the District Court held was that there was nothing new presented on the question of irreparable harm from the second injunction to the first injunction. And the Court didn't reach the merits issues because it didn't have to. And the reason was because there was no additional or different evidence of irreparable harm. The Court had held in the first injunction that CORE had failed to come forward with anything other than speculative assertions of harm. And in its second motion, while CORE did present additional merits arguments about the software application, it did not present anything other than the very same assertions it had made the first time. But there was a new fact, the discovery that the software was on ST's system. That's pretty serious. Isn't there presumed harm to find out your trade secrets or someone else's possessions? And I don't think it's any different than in the patent context, Your Honor, where there is no presumption of irreparable harm. eBay, which Judge Gerardo cited, I think holds that in the permanent injunction context. So even in a case where it has been adjudicated that a patent has been infringed. Well, that was no presumption, if I remember correctly, based on likelihood of success, right? I believe eBay was a permanent injunction. So what the court said there is that the same equitable factors that govern every other case govern a case involving patents. And I think trade secrets, the counsel was arguing that there's a property interest. That was the same point in eBay and other decisions of this court, that a patent is also a property interest. They will be entitled to litigate this claim. We took steps following the discovery of it to make sure that this software application wasn't going to be used. It's been sequestered in counsel's office. It's not going to be used. Shouldn't it make a difference that under Texas law, which let's say it's Texas law. I don't know if Oklahoma law on trade secrets would be any different. I'm not sure it's important. But say under Texas law, that when a defendant, I'm reading here obviously, when a defendant possesses trade secrets and is in a position to use them, harm to the trade secret owner may be presumed. Doesn't the substantive law of trade secrets and any state law, relevant state law, govern whether there is a presumptive irreparable harm? This doesn't quite say irreparable, but there are more cases like this, which may then be the key distinction between the eBay setting and this one. I would say no, Your Honor, in the first instance, because the question about whether someone is entitled to an injunction is a question of federal law governed by federal decisions, including the Supreme Court and this court, not state law. But taking those cases that I believe were cited in the library on their own facts, there were three cases cited, each of which involved a situation where an injunction had been granted based, notwithstanding the broad language that is in those opinions, the facts of those cases either had been used or was going to be used. And in terms of the harm element, I would look to the Fox case, which was the one about fish, and that was also cited in their brief. And in that case, the court cited that principle on the merits issues, in terms of the use and on the merits likelihood of success, but then reversed the preliminary injunction in part based on the lack of irreparable harm. So I think that as this case stands, the federal law governs and the federal law requires some concrete, non-speculative evidence of irreparable harm that has to be put forward by the movement and the right to relief has to be clear and unequivocal. How in a circumstance like this, where they have this tiny piece of information, but the portions it used, and how are they supposed to do anything other than essentially trigger a law-provided kind of presumption about irreparability of harm from the competitor's apparent use of the trade secret? There's a couple of things. They could have, of course, brought it to our attention before moving in court, and we could have provided them with what they wanted. But also, once they moved in court, we did provide the declaration of their, I guess in essence, star witness, Mr. Swanson, who said, this has not been used. I've searched. We put him in charge. But there's a stay of the process by which they can try to show not to be believed. And here's what I think should have happened if they wanted to pursue this further. First of all, they talked to Mr. Swanson themselves. They recorded this conversation. They had an opportunity to do that. But in the normal circumstance, you don't have discovery before a preliminary injunction. But you can. You can, but what you also can do is what happened in the first preliminary injunction with the judge doing it on her own, and that is to have an evidentiary hearing in connection with the preliminary injunction. They never sought ever, on their second motion for preliminary injunction, to put anybody on the stand. But I guess I'm having difficulty faulting them for that because they didn't know anything more. Everything about whether there's irreparable harm here is about what you did inside your offices and out in the field when you were dealing with the people who were using your product at the oil well sites or whatever it is. They had no idea. And they couldn't find out with a stay of discovery. First of all, I would disagree, I guess, in some respects, that that's the only way. They presented what they viewed as evidence, the same kind of evidence they put forward in the patent claim, which was price discounting. They said that they had to discount their prices in areas where they competed with us. But obviously, that doesn't satisfy the requirement of non-speculative concrete evidence. In terms of what Mr. Swanson did or knew, we put forward a declaration in response to their declaration. I mean, truly, you can't ask us to think that the fact that he put in a declaration that they couldn't essentially try to rebut through discovery can mean that, oh, well, there was a full evidentiary record. Not through discovery, Your Honor, but I do believe they would have had the right to ask the district court. I mean, the district court didn't construe the stay as covering the preliminary injunction hearings or proceedings. The district court did not construe the stay in that way. And that's, of course, why we don't think there's jurisdiction to hear the stay issues. But they could have asked for an evidentiary hearing in which they could have put Mr. Swanson on the stand and cross-examined him on all this. They could have put other people on the stand, Kelly Bryson, who they believe took it. They could have put him on the stand. In fact, in the first preliminary injunction motion, the district court itself held an evidentiary hearing on its own initiative, said, I want witnesses to come in here and testify on the questions, including the question of irreparable harm. And it was in the basis of those witnesses, not discovery, it was on the basis of those witnesses that the district court found no irreparable harm and denied the motion. It was entirely up to the court in this case, because in the normal instance, you don't have discovery before a preliminary injunction. You normally bring them in the first week or two of the case. They would have had that opportunity. For whatever reason, they did not choose to seek an evidentiary hearing. They let the matter rest on the papers. And as the papers are before this court and were before the district court, Mr. Swanson was consistent. In fact, he was consistent. He didn't vary on this point. He was consistent in the tape recording that they made of him and in his declaration that he wanted to do the right thing. He said he was approached. He did not use this. He refused to use it. He would not use it. And then what we did, once we knew about this, is we put him in charge. The spectrum put him in charge of the process of finding out, is this file anywhere else? It was on an external hard drive. It's not in the record, but that was actually in somebody's desk drawer, which is why it wasn't uncovered before. He then testified in his declaration, I've looked everywhere. I have not found it. And I've given it to counsel, and counsel now has it. So if this case is now going to go forward after the stay expires, they can bring their claim, but I would submit to you that they would not be able to succeed. However, the district court did not throw them out of court on this claim. All the district court said was, you haven't shown irreparable harm, so I'm denying the injunction. They do have the right to proceed, and if one were to credit their price discounting, if they were ever to come forward and say that we had to discount our prices because they used our intellectual property. One thing that wasn't clear to me, was the whistleblower deposed after that document was provided, stating that he had investigated the computers? He was not deposed, Your Honor. What I'm suggesting... That was what I wondered. It doesn't make it clear that that was... What I'm suggesting is they would have had the right to call him onto the stand in the case of the preliminary injunction. We're talking about the circumstances that existed at the time. Absolutely. And they have this claim. The claim has not gone away. It's just that they don't have the right to a preliminary injunction on it. In terms of the jurisdiction... Can I ask about something that I'm not sure has been discussed much in the briefs, but I was trying to think, and maybe more in the abstract, but what might be the difference between inadequate compensation in the patent preliminary injunction context and this context? The patent, as I understand it, goes pretty close to the core of your ability to be in business at all. Assume that for a second. Assuming that it's valid... Yes, of course. It is one thing, maybe, to say we can measure in dollars how much we've lost if you guys just, by your being in business, comparing it to the alternative, you guys are not in business at all, and without the patent infringement, you wouldn't have been in business. We used to have all the customers. Now we have fewer than all the customers. The prices used to be here, and now they're here. Big, big number, but compensable because, to use some of your words, the damages would not be speculative. Trade secret harm. Much, much smaller, but almost impossible to measure, because who knows which of the customers you use pricing information and, therefore, low-balled the figure. Much smaller damages, but much, much harder to assess. First, I will answer the question. First, I will say that none of what Your Honor is talking about is anything that they put forward into the record. They have a damages expert, one of the world's renowned experts on retainer, in this case. They did not put him in on the preliminary judgment, but putting that aside, I think that that same issue arises in patent litigation as well. It may be that this particular patent, if it were valid and infringed, is very important to this business, but a lot of cases, the patent isn't the central focus of the business. It's a smaller focus, and the courts have had no difficulty in, or little difficulty in those cases, at the end of the day, in finding an appropriate damages remedy. I submit to you there wouldn't be any, in this case, because it wasn't used, it will not be used, and it was never used. But if it got to that point, yes, they could do the same kinds of things that are done in patent cases when the patent itself is not, say, the whole business. And it is quantifiable. You can license trade secrets in the same way you can license patents, and there are a lot of records. But very, very, I mean, there's just so much guesswork. I mean, licenses, yes, but licenses even in the patent context are, I think, are used as a pretty poor but sometimes unavoidable substitute for a direct assessment of what the world would have looked like. Even accepting that, Your Honor, I still think that you're not entitled to an injunction because you have to put forward concrete evidence that you have been irreparably harmed by what they're doing. And what they put forward were these price discounts. It was actually the same kind of evidence that they put forward on the patent claim that the district court said was insufficient. And the reason it was insufficient is they didn't link it in any way to the use of the intellectual property. But even if they had, those discounts... I'm sorry, the district court's opinion on the first thing, just correct me if I'm wrong, was extremely short, but it didn't say that there was no caused damage. It said there was no irreparable damage, right? Not compensable by... Not compensable. So it could have been that in fact all of the customers they lost and the price erosion, I guess documented the second time, was in fact caused by the infringement of presumptively valid patent and so on. But that's a very much harder thing to say about the much subtler and more limited use of the trade secret. And I guess what I'm wondering is whether the substantive law of the remedies for trade secret in creating a kind of presumption of irreparable harm is backed up by the kind of explanation that I was just trying to... I don't think so, Your Honor. I don't think they've relied on any presumption of irreparable harm on any trade secret issues. Federal law doesn't specify that. We've cited cases in federal law which don't apply that. The Supreme Court said it's not the case in patents, and I think it should work the same way. They could have come forward and made the kinds of arguments that Your Honor is making now. They could have supported them with expert testimony. They could have said all of those things. Well, it's state law, isn't it? And I think since there hasn't been a trial where we can... It may be premature to speculate. I know that I'm over my time, but the district court told them in the first preliminary judgment, here's what you didn't do. You didn't make these kinds of showings. If they wanted to try the argument that Your Honor is making, they could have done it in the district court, told them expressly, here's what you're missing. You're missing this component. They filed a second motion that had new information about merits, but didn't have anything new on the irreparable harm. And the district court was entirely within its discretion on that record, given particularly what it had said before, in denying the second motion. And that denial should be affirmed. Thank you, Mr. Franklin. Ms. Cheney. I'd like to begin where Mr. Franklin left off, which is the court did come forward with supplemental evidence to fill in the perceived gaps that the district court noted in connection with the first motion for preliminary injunction. With the emergency motion, CORE included the declaration of Mike Flecker, CORE's president, who provided specific information about price erosion and market harm that the district court had said was missing the first time around. So CORE did, in fact, come forward with that the second time. I also think, as I want to point out, Texas law does apply to the trade secret claim. The case was originally filed in Texas. It was transferred for convenience under Section 1404. Therefore, the law of Texas still applies. The Fox case that Judge Taranto was discussing is the law of this case, and it does say that in the context of a preliminary injunction for misappropriation of trade secrets, all the trade secret owner has to show is possession of the trade secret and being in a position to use it. Both of those are very clearly met here, and the likelihood of success prong of the preliminary injunction is clearly established by CORE's evidence. So to return to what CORE is seeking from this court and why it's appropriate to send it back to the district court with instructions to enter that injunction and to sever and lose the say, effectively, any other decision by the district court says that former employees can leave their employer, can take trade secrets and confidential information from that employer, use those trade secrets in competition, fail to produce them in discovery when they're sued by their employer, because CORE made several discovery requests before this day that sought information about trade secrets that might be in the possession of the appellees, and this software application was never produced in response to any of those requests in discovery. And all of that isn't enough for an injunction. So those employees wouldn't have to worry about being enjoined during the lawsuit. And I think that for any district court to find that under these facts would be an abuse of discretion. So unless the court has more questions. Any more questions? Thank you, Ms. Chaney. Mr. Franklin, the case has taken a new submission.